**FRED HARVEY, Inc., v. CROOKS, Collector of Internal Revenue.**

**No. 6751.**

District Court, W. D. Missouri, W. D.

Feb. 24, 1930.

Louis L. Hamby, of Washington, D. C., and Shouse, Doolittle & Morelock, of Kansas City, Mo., for plaintiff.

Wm. L. Vandeventer, U. S. Dist. Atty., and Harry L. Thomas, Asst. U. S. Dist. Atty., both of Kansas City, Mo., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Lyndon H. Baylies, Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

REEVES, District Judge.

Plaintiff seeks the refund of a certain tax which it was required to pay. Such tax was imposed upon a large number of cases of beverage, known as "soda pop," and which were either sold to or through the agency of persons known and designated as "News Agents."

It is the contention of the plaintiff that such beverage was sold to and not through the agency of such "News Agents," and that in consequence the tax should be computed upon the amount *paid* by the news agents, and not upon the amount *received* by such agents.

The statute, under which the tax was imposed, is found in the Revenue Act of 1918, and is numbered section 628 (40 Stat. 1116). This section imposes a tax of 10 per cent. upon "soft drinks, sold by the manufacturer, producer, or importer, in bottles or other closed containers."

Plaintiff sold the beverage in question to or through the agency of its news agents traveling on passenger trains of the Santa Fé Railway Company. There was no written contract or agreement between plaintiff and such news agents. An oral agreement, however, imposed upon the news agent the duty to make sales of specified articles placed in his custody on his trips over the railroad and to account therefor at a specified price, and to return for credit unsold merchandise. A special arrangement with respect to soda pop was that such agent should make sales at a fixed price of 10 cents per bottle, or $2.40 per case of twenty-four bottles. However, such agent was only charged by plaintiff upon the basis of $2 per case, and was allowed a commission of 20 per cent. on that basis. The net charge to plaintiff was $1.60 per case. This meant a profit to the agent of 80 cents per case of twenty-four bottles.

According to the evidence, the amount allowed the agent above $2 was treated as a bonus. It was held out as one of the inducements to enter the service. The plaintiff not only received and credited the agent with un-sold merchandise, but in case of breakage, without the fault of the agent, gave credit just the same as if the merchandise had been returned. Plaintiff held a contract with the railroad company which accorded the right of travel by said agents over its lines in selling said merchandise. In such contract, said agents were considered employees of the plaintiff.

1. The only question involved in this controversy is whether the sale of soda pop was made to such agents by the plaintiff or whether handled on consignment, or by bailment for the benefit of the plaintiff. In Jackson et al. v. McIntosh (C. C. A.) 12 F.(2d) 676, loc. cit. 678, a sale is defined as "a change in the beneficial ownership of the thing dealt with, and a price, paid or promised, and certain or capable of being ascertained, are essential ingredients of a sale."

Blackstone defines a sale as "a transmutation of property from one man to another in consideration of some price or recompense in value." See, also, Williamson et al. v. Berry, 8 How. (49 U. S.) 495, 12 L. Ed. 1170.

Whether a contract or transaction, as in this case, amounts to a sale or a mere bailment, or consignment, is the question for consideration.

The evidence showed that the traveling news agent was actually debited by plaintiff on its books at the rate of $2 per case of twenty-four bottles, but was required to sell the bottles at 10 cents per bottle, or at the rate of $2.40 per case. He was required to do this upon peril of discharge. This was an extra compensation offered as an inducement to engage in the service.

A further compensation was computed upon the bookkeeping debit of $2 per case. The agent was entitled to a 20 per cent. commission, or 40 cents per case, aside from his bonus. He could return unsold goods or could have credit for breakage without his fault. The compensation of the agent depended upon his commission and his bonus.

■ "This question is largely one of intent. Judged alone by the terms of the contract, the intention to create a bailment and not a sale clearly appears, and entitles appellee, in the absence of fraud, to take back the goods upon consignee's bankruptcy." McCallum v. Bray-Robinson Clothing Co. (C. C. A.) 24 F.(2d) 35, 36; Ludvigh v. American Woolen Co. (C. C. A.) 188 F. 30; Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345.

468

The Supreme Court in Sturm v. Boker, 150 U. S. 312, loc. cit. 329, 14 S. Ct. 99, 104, 37 L. Ed. 1093, said:

"The recognized distinction between bailment and sale is that, when the identical article is to be returned in the same or in some altered form, the contract is one of bailment, and the title to the property is not changed. On the other hand, when there is no obligation to return the specific article, and the receiver is at liberty to return another thing of value, he becomes a debtor to make the return, and the title to the property is changed. The transaction is a sale. This distinction or test of a bailment is recognized by this court in the case of Powder Co. v. Burkhardt, 97 U. S. 110, loc. cit. 116 [24 L. Ed. 973.].

"The agency to sell and return the proceeds, or the specific goods if not sold, stands upon precisely the same footing, and does not involve a change of title. An essential incident to trust property is that the trustee or bailee can never make use of it for his own benefit, nor can it be subjected by his creditors to the payment of his debts."

This case was followed in the Eighth Circuit in Ellet-Kendall Shoe Co. v. Martin (C. C. A.) 222 F. 851, loc. cit. 855. See, also, 23 R. C. L. §§ 33 and 34, pages 1214, 1215, and 1216; 35 Cyc. 27.

In view of the above, the court must hold that the news agent was acting for and on behalf of the plaintiff, and that the sales made by such agents were the sales of the manufacturer. Accordingly, the computation made by the government on the basis of a sale price of $2.40 per case was correct.

2. Objection has been made by the government to the right of the plaintiff to prosecute this action upon the ground that the claim here pressed varies from that interposed before the commissioner. There is a difference, but only in amount. The same theory is maintained here.

Originally, it was contended that the assessment should only be computed upon the basis of 70 cents per case instead of $2.40 per case. Plaintiff has in this court receded from that position, and now contends that the tax should be computed upon the basis of $1.60 per case. This does not appear to be such a change of position as to deny plaintiff's right of action.

The evidence of the plaintiff was insufficient to show a right of recovery. Accordingly, judgment will be entered for the defendant.