**GRIGGS v. BAUMER.**

**BARRAND v. SAME.**

Nos. 7926, 7907.

Circuit Court of Appeals, Third Circuit.

Argued July 6, 1942.

Decided Sept. 18, 1942.

Thomas N. Griggs, of Pittsburgh, Pa. (Griggs & Moreland, William A. Blair and Raymond F. Moreland, all of Pittsburgh, Pa., on the brief), for appellant in No. 7926.

Ella Graubart, of Pittsburgh, Pa. (Patterson, Crawford, Arensberg & Dunn and Charles F. C. Arensberg, all of Pittsburgh, Pa., and Alfred H. Sachs and Ezra Z. Shapiro, both of Cleveland, Ohio, on the brief), for appellant in No. 7907.

Philip N. Shettig, of Ebensburg, Pa., for appellee.

Before MARIS and GOODRICH, Circuit Judges, and BARD, District Judge.

BARD, District Judge.

In each of these cases the appeal is from an order of the court below, after hearing, dismissing the complaint.

Thomas N. Griggs is the plaintiff in the one action and Harry P. Barrand in the other. The defendant in both actions is Herman E. Baumer, the Receiver of the First National Bank of Johnstown, Johnstown, Pennsylvania. As Receiver, the defendant had in his possession as part of the assets of the bank, 10,639½ shares of the Climax Fire Brick Company.

On July 1, 1941, the defendant received from Barrand a written offer to purchase these shares at $25.00 per share. The offer was accompanied by a cashier's check in the sum of $26,598.75 as earnest money. The Receiver, having first had the approval of the Comptroller of the Currency to sell the stock at not less than $25 per share, presented a petition to the Court of Common Pleas of Cambria County, Pennsylvania, to conduct a public hearing before the court, for the purpose of selling the stock at $25 per share or higher. The court granted authority to hold such a hearing, reserved the right to reject any bid, and declared that any sale was subject to the approval of the court. Due notice was given of the hearing.

On July 18, 1941, a hearing pursuant to the petition was held before a judge of the court, at which the counsel for the Receiver acted as auctioneer. In addition to the original bid of Barrand, bids were offered at the hearing by Griggs and one Harry V. L. Hager. Griggs was declared the purchaser by the acting auctioneer, for the sum of $27.25 per share, and directed to deposit the earnest money of $25,000. Immediately thereafter Griggs placed a certified check for $25,000 before counsel for the Receiver, but before the court had signed any order confirming the sale to him, counsel for Barrand addressed the court, claiming as the original offerer the right to purchase the stock at the highest price bid by any other party. The court rejected this contention, but allowed the bidding to be reopened. Counsel for Barrand, after consultation with his client, bid $27.30 per share. No further bids were made. Griggs thereupon stated that it was his position that the sale had been consummated to him and that no further bids could be accepted, and that he wished an exception noted to any further action. The court announced that the highest bid was $27.30 and signed an order of confirmation presented by the Receiver approving the sale to Barrand at that price, Barrand having previously made the necessary deposit. Griggs then requested the court for leave

to file written exceptions to this order of confirmation within five days, which request the court granted.

Barrand went with the Receiver from the Court House at Ebensburg to the bank at Johnstown and delivered certified checks for the full amount of the bid, and the Receiver delivered to him a certified copy of the order confirming the sale, together with a bill of sale for the stock. Delivery of the stock was withheld pending the clearing of the checks.

Within the five days, Griggs filed his exceptions, seeking vacation of the order of sale to Barrand and an order confirming the sale to him, and Hager filed a petition to set aside the sale to Barrand and re-open the bidding, in which petition he offered to bid $10,000 (later increased to $15,000) in excess of the Barrand bid. The court issued a rule on all interested parties to show cause why this petition should not be granted. The Receiver answered that Barrand's checks for the full purchase price had cleared and that he was ready to deliver the stock to Barrand. On August 11, 1941, after hearing, the court dismissed Griggs' exceptions, but it vacated the order confirming the sale to Barrand and ordered a resale to Hager at the amount offered by him.

Griggs and Barrand thereupon each brought an action in the federal court against the Receiver, setting forth these facts and seeking to establish the validity of the sale to him and to compel the Receiver to deliver the stock to him. The court below, holding that the Court of Common Pleas of Cambria County had not made a final order of confirmation to either Griggs or Barrand, granted the defendant's motions to dismiss their complaints.

In approving the sale of the assets of a national bank by the receiver thereof, the Court of Common Pleas of Cambria County was acting under the authority of the Act of May 15, 1916, c. 121, 39 Stat. 121, as amended, 12 U.S.C.A. § 192. The relevant portion of this Act states: "Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; * * *."

It is established that a court in entering an order of approval of a sale under the authority of this act is not adjudicating a judicial controversy, determining the rights of adverse parties, but is acting in a merely administrative or supervisory capacity. Mitchell v. Joseph, 7 Cir., 117 F.2d 253; Fifer v. Williams, 9 Cir., 5 F.2d 286; Roth v. Hood, 6 Cir., 106 F.2d 616; Fox v. Young, 145 Pa.Super. 111, 20 A.2d 835. In the Mitchell case, supra, the court said at page 255 of 117 F.2d: "The entry of approval constitutes neither a suit at law nor one in equity. It presents no justiciable controversy. It involves the entry of no judicial order or judgment which may be reviewed by an appellate court. The actions of the receiver are purely administrative and the requirement of the statute that he obtain an approval from the court accomplishes nothing other than the designation of the court as a superior and advisory administrative officer."

The purpose of this Act, as well as its character, was well stated in Fox v. Young, supra, 145 Pa.Super. at page 113, 20 A.2d at page 836: "The purpose of this legislation is to furnish the Comptroller with a check on the receiver by a functionary with knowledge of the local circumstances which enter into the problem of obtaining an adequate price for the property, but the statute 'does no more than make the court a superior and advisory agent in the administrative field. Its order adjudicates no rights. It is merely a condition precedent to the receiver's power to sell'. It follows, therefore, that the original proceeding for the approval of the sale was not a judicial proceeding, was not reviewable and the petition to set it aside filed to the original term and number was a nullity; although in a proper case the consummation of a sale might be enjoined or the sale set aside by an independent action."

It is clear, therefore, that if the Court of Common Pleas of Cambria County did any act or acts which constituted a final "order" approving the sale to either of the plaintiffs, its authority under the Act of Congress was completely exercised, and any subsequent actions purporting to authorize a further sale or create rights in

other parties were without authority or effect.

We agree with the court below that the complaint of the appellant Griggs was insufficient to show that the sale to him had been approved by the Court of Common Pleas within the meaning of the Act of Congress. It is true that the stock had been "knocked down" to him in compliance with the terms and conditions of the auction announced by the Receiver's attorney in the presence of the court. But the court still had the power and duty to consider the propriety and wisdom of making an order approving the sale, and it elected to entertain further bidding. In Roth v. Hood, 106 F.2d 616, at page 618, the Circuit Court of Appeals for the Sixth Circuit, in disposing of a contention such as is made by the appellant Griggs, aptly stated: "The bidder to whom property has been knocked down at a public auction conducted by the receiver of a national bank where the sale is held precedent to the order of a court of record of competent jurisdiction does not acquire rights which have the same legal protection as those acquired at private or judicial sales. Until an order is first obtained, the sale is in no sense judicial or legal. The accepted bidder occupies the position of a continuing offerer for the property which the court, in the exercise of its discretion, may direct the receiver to accept or may order the sale on other terms or conditions. It follows that the appellant may not question the action of the court in rejecting his offer for the property."

We cannot, however, agree with the court below as to the rights of the appellant Barrand. After the bid of $27.30 on his behalf had been made and no further bids were made, the Common Pleas Court signed an order presented by the Receiver, final in terms, confirming the sale to Barrand at the bid price. That order was lodged with the prothonotary and a certified copy thereof delivered to Barrand the same day. In our opinion, this constituted an order approving the sale within the meaning of the Act of Congress and exhausted the authority of the court to act in the matter. "Exceptions" by a third party to the entry of this order were of no effect and the court had no further jurisdiction to hear and dispose of them or of the petition of Hager to re-open the bidding and to entertain his higher bid. Fox v. Young, 145 Pa.Super. 111, 20 A.2d 835.

The court below held that it would be unduly technical to preclude the common pleas court from considering objections to the confirmation because the confirmation order was signed and "inadvertently" allowed to remain upon the record. If the common pleas court wished to hold its confirmation of the sale in abeyance pending consideration of the contention of one bidder that he was legally entitled to be declared the purchaser, it should not have signed a final order confirming the sale to another. Once such an order is signed, the purchaser named therein is entitled to rely upon it, and the court cannot, in the absence of fraud or mistake, rescind that order, even for the laudable purpose of securing for the creditors and stockholders of the bank a substantial increase in the price of the assets sold.

The further contention of the appellee that Section 265 of the Judicial Code, 28 U.S.C.A. § 379, which prohibits a federal court from enjoining proceedings in a state court, is a bar to Barrand's action, is without merit. All proceedings which the state court was authorized to conduct were terminated with the filing of its order confirming the sale. The relief sought by Barrand is the ordering of the Receiver to complete that sale by delivery of the stock, and this in no way restrains any action which the state court was authorized to conduct.

In Appeal No. 7926 the order of the District Court is affirmed. In Appeal No. 7907 the order of the District Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.