Ruffin, C. J.
 

 It seems to this court, that the judgment of the Superior Court is right,
 

 In the first place, as between Williams and Floyd, the court can take no notice of the entry of the discharge of the latter, which was stricken out; for by that act, it is the same as if the entry had never been made. It was exclusively for the court which made the ¿entry, to allow it to remain, or to set it aside. The debtor is no worse off now, that it is set aside, than he would have been if it had never been made; and ¡therefore he has .not been injured .thereby. This court, therefore, is to regard the question presented to us, not in the light, that Floyd was discharged by ¡the entering the order to that effect in the suit by Williams, but in this: whether what had ,been..done in Miller’s suit was in law and fact a discharge from imprisonment at the suit of Williams, so that no judg. ment could be had therein, on which Floyd’s body could be further detained, or again imprisoned. If the answer be in the affirmative, then the judgments moved for by the plaintiff .ought not to have been given, whether the discharge had been previously entered or not, or w.as properly expunged or not.
 

 
 *657
 
 It appears to us, that it is not difficult to understand our legislation upon this subject; and that it is plainly the intention of the legislature, that, in every case, in which the debtor does not entitle himself to his discharge by taking the oath of insolvency, there is to be a judgment against him for the debt and all the costs incurred in the original suit and under the
 
 ca. sa.,
 
 upon which judgment the debtor may be imprisoned : if rendered upon his default in not appearing, he may be imprisoned by process of execution, on which he shall not be entitled to the benefit of the act of 1822; and, if rendered when the debtor is in court, for fraud found against him, or for failing to give notice, or for refusing to be examined, by the judgment of the court, that he be imprisoned — which is, necessarily, in execution for the debt and costs — until he make a full disclosure, give the necessary notice to the creditor, and take the oath of insolvency. It is clear that it must be so. The act, Rev. St. c. 58, s. 7, says expressly, that in case the debtor shall fail to appear, judgment shall be rendered
 
 instanter,
 
 upon the bond given to the sheriff, against the principal and his sureties, to be discharged
 
 wpon the payment of
 
 the debt and costs. But it is said, that such a judgment cannot be rendered in this case, because that bond was never forfeited, but saved by the surrender and imprisoning of the principal. Whether the sureties could surrender the principal after the court, “ to which the
 
 capias ad satisfaciendum
 
 is returnable.” may, possibly, be a question upon the 9th section of the act, but we assume, that they may; still, if the debtor and creditor make up an issue and incur costs, and the principal is surrendered and imprisoned a day or a week and then escapes, is the creditor to be put to a new
 
 ca. sa,
 
 upon his original judgment as at common law, and lose all those costs ? Surely not. For if he were put to to a new
 
 ca. sa.
 
 he would not only lose his costs in the first proceeding, but the debtor might again avoid going into close prison, by repeating the process of giving bond to take the benefit of the act; whereas the act is precise, that where the debtor fails to appear, and a judgment is rendered in court therefor, he shall not be en
 
 *658
 
 titled to the benefit of that act. When the act uses the lan-£ua§e» then, that there shall be judgment on the bond against the principal and his sureties, to be discharged by the payment of the debt and costs, it merely has a view to the responsibility of the sureties, as, probably, the best security for the creditor, and they can be reached only upon their bond, because, by that only, have they made themselves liable. But there is no necessity for the bond to get at the principal debt- or ; for he was chargeable upon the original judgment for the debt and costs, and upon the proceedings in that court for the costs thereof; and, upon them, there must be judgment there for the debt and both sets of costs against the principal, as the oqly means of making the debtor liable for the costs and of subjecting him to the actual imprisonment, which, in such case, is imposed on him. This meets the case before us, which is one in which the debtor failed to appear personally, when lawfully demanded; which he is bound to do in the County and Superior Court.
 
 Mooring
 
 v. James, 2 Dev. 254.
 
 Wilkins
 
 v.
 
 Baughan,
 
 3 Ired. 86. It is true, there the judgment was on the appearance bond, and the court, not wishing to go beyond the case, reserved an opinion upon the case when the debtor was present, as to the judgment then to be rendered against him and his sureties for an appeal. In this case he was not present, and therefore there could be no judgment that he be in custody immediately; but the judgment should be merely for the debt and all the costs, on which the creditor might take out any execution he chose. For that judgment, the sureties for the appeal are of course liable ; as in every case of a judgment against an appellant for money, the sureties are conclusively fixed therewith.
 

 It would also be the same thing, if the debtor had appeared, and had refused to be examined, or fraud had been found against him, or he had refused to take the oath of insolvency; in all those cases, there must be a judgment for the costs, and, consequently, for the debt also, and then a further judgment or order, that the debtor be imprisoned, as in execution, until he should duly discharge himself, as an insolvent debtor, by a
 
 *659
 
 full surrender of his property, due notice to the creditor, and taking the oath. That is the direct effect of the 10th and 11th sections of the act; and the correctness of the position is rendered still more plain by the provision in the 19th section, that any debtor, against whom an issue is found, or who for any cause is
 
 adjudged to be imprisoned
 
 until, &c., shall not be entitled to the benefit of the prison bounds, but shall remain in close prison, until discharged by being permitted to take the oath of insolvency. For what is he to be
 
 adjudged
 
 to be imprisoned ? Not ior a contempt of the court, for then there would be no security for the creditor for his debt, in case of an escape, since the creditor could not charge him in custody by another
 
 ca. sa.
 
 for the same debt. He is therefore committed in execution, and, necessarily, he is in execution upon the judgment then rendered by the court, for both the debt and the costs. When that judgment is rendered by the court, to which the process was returnable, the plaintiff can have nothing more ; for the debtor's appearance discharged his sureties to the sheriff, and no one else but the debtor is bound for the debt or costs. But when from that judgment the debtor appeals, which he may do, “ as in other cases,” his sureties for the appeal bind themselves, that he will prosecute his appeal with effect, or that he will perform the judgment of the court, and the act of 1785 directs, that where judgment is rendered against the appellant, judgment may also be rendered
 
 instanter
 
 against the sureties for the appeal, for the sums adjudged against the appellant himself. Of course, then, if in the Superior Court the issue be found against the debtor, or for any cause judgment be then rendered against him for the debt and costs, (though he be adjudged to be imprisoned thereon, until, &c.) his sureties for the appeal are liable for the payment of the money, for which such judgment is given, and judgment may be rendered against them summarily, as in other cases.
 

 In treating the subject hitherto, the case has been considered as if the proceeding by Williams were the only one against Floyd; for we have been endeavoring to ascertain, what is
 
 *660
 
 the proper judgment against the debtor himself, supposing ^im not t0 duly discharged, and then what judgment is to be grounded thereon against the sureties for the appeal. It remains, however, to be seen, whether this debtor had been duly discharged.
 

 The first ground on which his discharge is rested is, that, in point of fact, he had been admitted to take the oath of insolvency by a court oí competent jurisdiction in Miller’s suit, and that is conclusive upon all creditors. This position is founded on the cases of
 
 Burton
 
 v.
 
 Dickins,
 
 3 Murph. 103, and
 
 Jordan
 
 v. James, 3 Hawks, 110. But those cases were decided on the act of 1773, which neither required nor provi-* dedfor notice to any creditor but the arresting one, but divested all the debtor’s estate ; wherefore the constitution discharged him altogether. But it has since been held in
 
 Crain
 
 v. Long, 3 Dev. 371, that, now the discharge operates only against those creditors to whom notice is given, because the act of 1822 authorizes the debtor to give notice to any or all of his creditors, and exempts him from imprisonment by those creditors only to whom notice was given.
 

 But another ground is taken on which it is insisted, that Floyd was discharged from arrest at the suit of Williams; which is, that Williams had received notice of his application in Miller’s case, and therefore was bound by the decision in it. This is founded on
 
 the
 
 provision, already quoted from the 10th section, for notice to all the creditors, and that those who receive notice shall not imprison the debtor again ;■ and on that contained in the 20th section, which allows any creditors, who may have been notified, to suggest fraud and join in the issues, but prescribes, that the debtor shall not be compelled to answer the suggestions of fraud but in one case. The cases, to which those provisions apply, may be either those in which there is but one arresting creditor, and where, consequently, there can be issues but in one case ; or those in which several creditors arrest the debtor, upon distinct judgments in the same or in different courts. Now, in cases of the latter kind, “ the debtor shall not be compelled to answer
 
 *661
 
 the suggestions of fraud but in one case,” that he may not be harrassed by attending at different places to establish the same facts, or unnecessarily incur the costs of many issues, when one may .serve the purpose of all. But this is manifestly for the ease of the debtor, and, if he will voluntarily answer the suggestions of fraud made in several suits, it is his own folly, and he must abide by the result in each suit, as between him and the creditor in that suit. The contrary construction would lead to the grossest frauds on the creditors. For if the' debtor can join issue in half a dozen different cases, pending in as many courts in distant places, and then insist that all the creditors are concluded by the verdict in any one of those cases, he would have his creditors going all over the State to attend on trials With him, or by concert with a friend in one suit might obtain his discharge as to all the creditors without-any real trial.
 

 The debtor might, therefore, in this case, have required the creditors to put all their suggestions into one,-or to come to-trial upon all at once, and as in one case and on suggestion of his wish, the court, in which any one of the cases was' pending, would have taken order to have the act observed. But he would not insist on that right, but, it may be, for purposes of his own, took separate issues in the several suits and, therefore, he has no right to treat a particular creditor, as a party to any issue, but that joined in his own suit. For^ suppose Miller to have suggested the concealment of one article of property, and Williams another ; upon which it might be the interest of Floyd not to combine the trial,- as he might think he could establish his schedule in one' particular, so as-to get a discharge from one creditor, when he might doubt as-to the other; and in case of failure he might be able to pay the one debt, when he could not pay both. In fine, the act gives a privilege to the debtor in this respect, and it is in his-power to renounce it, and he did so here.-
 

 It is unnecessary, that we should speculate as to what would' have been the effect of the debtor’s, appearing in court when demanded, although he had escaped and been at large after
 
 *662
 
 the preceding term. It is sufficient that he was not in court, w^en ought to have been, to found a judgment on his default for the debt and costs: for which the sureties for the ap-peaj are liable. Their offer to surrender the principal to the sheriff cannot relieve them; for they are bound for his performance' of the judgment, and cannot discharge themselves by a surrender. If the debtor’s re-appearance could have availed him or them, they should have prevailed on him to come to court, instead of going to the sheriff. However, that is a matter not before us, and on which we do not pretend to have formed an opinion.
 

 Per Curiam,-Judgment affirmed.